IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

AMERICAN RESOURCES INSURANCE)
COMPANY, INC.,                              )
                                            )
        Plaintiff,                          )
                                            )
v.                                          )        CIVIL ACTION 07-0035-WS-M
                                            )
THE EVOLENO COMPANY, LLC, et al.,)
                                            )
        Defendants.                         )

## ORDER

The Court previously granted the plaintiff's motion for default judgment against defendant The Evoleno Company, LLC ("Evoleno") as to liability and set the matter for hearing on damages and the language of any declaratory judgment to be entered.   (Doc. 129).  After considering the testimony and exhibits presented at the hearing, as well as the affidavits previously submitted, the Court awards relief as set forth below.

The plaintiff seeks a judgment in the amount of $23.9 million as well as declaratory relief.  (Doc. 125 at 6).  "While well-pleaded facts in the complaint are deemed admitted, plaintiffs' allegations relating to the amount of damages are not admitted by virtue of default; rather, the court must determine both the amount and the character of damages."  *Capitol Records v. Carmichael*, 508 F. Supp.2d 1079, 1084 n.4 (S.D. Ala. 2007); *see also Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003) ("A court [on entering default judgment] has an obligation to assure that there is a legitimate basis for any damage award it enters ....."); *Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) (on default judgment, "[d]amages may be awarded only if the record adequately reflects the basis for award ...."); 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2688 at 58-59 (3rd ed. 1998) ("If the court determines that [the] defendant is in default, the

factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."). Thus, the mere granting of default judgment did not establish the plaintiff's entitlement to any quantum of damages.[1]

"[J]udgment of default awarding cash damages [can]not properly be entered without a hearing unless the amount claimed is a liquidated sum or one capable of mathematical calculation. [citation omitted] Damages may be awarded only if the record adequately reflects the basis for award via a hearing or a demonstration by detailed affidavits establishing the necessary facts." *Adolph Coors*, 777 F.2d at 1543-44 (internal quotes omitted). Because, as the Court advised the plaintiff at the time, its affidavits did not meet this standard, a hearing was set. (Doc. 129 at 5-6).

**I. Damages.**

The plaintiff has made claim to several elements of damage, which are discussed seriatim below.

**A. Funds Wrongfully Withdrawn from Ultimate Warranty Trust Account.**

In its affidavits and testimony, the plaintiff presented evidence that over $4 million was wrongfully withdrawn from the trust account, and the plaintiff seeks an award of this

---

[1]The plaintiff suggests it is entitled to $23.9 million in damages because the facts it inserted in the joint pretrial document establish that level of damages and because Evoleno's failure to participate in the creation of that document renders those facts established for purposes of entering judgment. (Doc. 125 at 5, ¶ 14). While a participant in a pretrial document or conference may make binding admissions therein, *see, e.g.,* 6A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1527 at 263-64 (2nd ed. 1990), the plaintiff offers no authority for the proposition that a non-participant, simply by not participating, admits the participant's version of damages or otherwise leaves them established for purposes of entering judgment. Absent such authority, the Court will not credit the plaintiff's argument. At any rate, the cursory treatment of damages in the joint pretrial document, (Doc. 120 at 40-41), even if it were deemed admitted by Evoleno, would not support the plaintiff's demand, for reasons largely explained in text.

entire amount.  However, the plaintiff's evidence reflects that almost all of these funds were withdrawn by Jim Tait, a trustee and a principal in the plaintiff's parent, not associated with Evoleno.  The plaintiff did not attempt, by evidence or argument, to show that Evoleno is responsible for Tait's withdrawals.  On the contrary, the plaintiff's evidence affirmatively absolves Evoleno of responsibility, as it attributes Tait's withdrawals to trustee Susan Marino's breach of fiduciary duty.  (Lee Affidavit, ¶ 3; Pate Affidavit, ¶ 9).[2]  Absent evidence that Evoleno's wrongdoing caused or contributed to Tait's withdrawals, the plaintiff cannot be awarded this amount against Evoleno.

The second amended complaint and the plaintiff's evidence do reflect that Evoleno was involved in Susan Marino's wrongful withdrawal of $150,000 from the trust account for her personal use, as the funds passed from the trust to Evoleno and then to Marino. (Doc. 64 at 10, ¶¶ 23, 26; Lee Affidavit, ¶ 3; Pate Affidavit, ¶ 9).

In summary, the plaintiff is entitled to an award of $150,000 under this element of damage.


**B.  Lost Income.**

The plaintiff's evidence demonstrates that, as a result of Evoleno's wrongdoing, its rating by A.M. Best & Co. fell from "A-" to "B" in June 2006 and has not recovered. The plaintiff's evidence also reflects that — primarily because many agents and many potential insureds are precluded from placing business with insurers not carrying an "A" or "B+" rating — the plaintiff's book of business fell between July 2006 and December 2007 after rising for several years.  In particular, the plaintiff has established that, between 2001 and 2005, its gross premiums rose by an average of 7% annually and that, had that rate of increase continued in 2006 and 2007, its gross  premiums during that

---

[2]While Marino was a member of Evoleno, the plaintiff introduced no evidence that she was acting as an agent of Evoleno in her capacity as trustee.  Nor does the second amended complaint contain an allegation that Marino acted as Evoleno's agent.

period would have been approximately $13.8 million above what they actually were.  The plaintiff seeks an award of the entire $13.8 million.

The threshold difficulty is that the plaintiff has offered no authority for the facially implausible proposition that an injured party may recover as an element of damages not merely its lost profit on foregone sales but the entire lost gross revenue from the foregone sales.[3]  While an Alabama plaintiff can recover lost profits, it must prove the amount "with reasonable certainty."  *E.g., Johns v. A.T. Stephens Enterprises, Inc.*, 815 So. 2d 511, 517 (Ala. 2001).  In *Johns*, this standard was met when the plaintiff offered evidence that the defendant represented the plaintiff would receive a weekly gross profit of approximately $3,112 for at least 52 weeks.  *Id*.  The plaintiff offered nothing similar in this case.

The plaintiff did present evidence that its average annual net profit over a period of four or five years (after ignoring an unprofitable outlier) was $1 million.  The plaintiff, however, did not present evidence of its net profit (or loss) for 2006 and 2007.  Had it done so, the Court could have estimated the amount of lost profits by calculating the difference between the historical trend of $1 million profit per year and the actual profit or loss for the two years in question.  Without such or similar evidence, however, the Court cannot estimate an amount of lost profit with the requisite reasonable certainty.[4]

In summary, the plaintiff is not entitled to any award under this element of damage.

_____

[3]*See, e.g., International Paper Co. v. Madison Oslin, Inc.*, 985 So. 2d 879, 886, 890-91 (Ala. 2007) (rejecting a damages award based on lost gross revenue because '[t]he proper measure of damages in cases such as this is the difference between the price agreed upon in the contract and the cost of performance, or, in other words, the profit.").

[4]The Court could not, for example — even had the plaintiff requested it — infer an amount of lost profit by reference to the evidence of gross premiums.  Because gross premiums for 2006 and 2007 exceeded those for 2002 and 2003 (when net profits averaged $1 million), net profit for the later years likely also averaged $1 million.

### C.  Losses on Policies.

The factual allegations in the second amended complaint, deemed admitted by Evoleno, establish that Evoleno represented that the plaintiff's participation in this business venture would be without risk to the plaintiff, because any claims on the vehicle service contracts ("VSCs") not paid by the companies issuing them ("obligors"), including Warrantech and Ultimate Warranty, would be paid through re-insurance rather than by the plaintiff.  The second amended complaint also establishes that some of the VSCs are not backed by re-insurance, and the evidence presented establishes that re-insurer Capital Assurance Risk Retention Group ("CARRG") is in receivership in South Carolina.[5]  The plaintiff presented evidence that it has set aside $2.6 million in reserves to pay claims not satisfied by the obligor (including through the obligor's trust funds set aside for payment of claims) or re-insurance, and it seeks an award of this entire amount.

The Court's confidence in this $2.6 million figure is undermined by its inconsistency with previous figures supplied the Court by affidavit.  One affidavit asserts that the plaintiff booked a reserve of $6 million, (Lee Affidavit, ¶ 5),[6] while another — dated the next day — states the amount as $4,654,000, with another $1.8 million "possib[le]." (Pate Affidavit, ¶ 7).  The plaintiff did not address or attempt to reconcile these rather large discrepancies or attempt to show that the $2.6 million figure is not inflated as the other figures apparently are.[7]

---

[5]To the extent the second amended complaint can be read for the proposition that none of the VSCs were backed by reinsurance, it is directly contradicted by the plaintiff's evidence that CARRG did provide re-insurance on some portion of the VSCs.  (Pate Affidavit, ¶ 6).

[6]It was apparently this figure which the plaintiff used in calculating its total demand of $23.9 million.

[7]To show the need for a reserve of $2.6 million, the plaintiff presented an actuarial report, but that report estimated the plaintiff's exposure at $1.325 million.  (Exhibit 155 at 11).  It may be that a later version of the report adjusted the recommended reserves upward to $2.6 million, but that is unclear from the testimony.

Nor is the Court satisfied that the amount held as reserves — which assumes no payments by any obligor beyond the funds held in their trust accounts, or by any re-insurer — represents a reasonable estimate of the plaintiff's future loss under its policies. First, any loss to the plaintiff depends on the obligors' failure to satisfy claims on the VSCs. The plaintiff did not address the ability of Warrantech or other obligors to do so from funds in addition to those held in their trust accounts. The plaintiff did note that Ultimate Warranty is in bankruptcy, but without more information concerning the bankruptcy and Ultimate Warranty's assets and liabilities, the mere fact of a bankruptcy filing is not proof the company can and will pay nothing on claims beyond what lies in its trust account.[8]

Any loss to the plaintiff also depends on the failure of re-insurance. The plaintiff did not attempt to quantify the number or dollar amount of projected claims over trust fund receipts that are not backed by re-insurance,[9] and it did not explain the impact of CARRG's receivership on its ability to pay claims on VSCs as to which it provided re-insurance. No doubt CARRG is in financial straits, but that is not equivalent to a showing that it will pay nothing at all on its obligations.

---

[8]The plaintiff presented a sampling of five correspondences reflecting dissatisfaction with obligors. (Exhibits 52-56). One deals with a "Velocity" VSC, which is an Evoleno product as to which the plaintiff is obtaining herein a declaration of no liability. *See infra* Part III. Two address VSCs issued after the cancellation date of the plaintiff's policies, in which the plaintiff represents that Ultimate Warranty used an outdated form incorrectly listing the plaintiff as insurer and that Ultimate Warranty in fact placed coverage with another insurer. The fourth addresses an Ultimate Warranty VSC issued five months before the plaintiff became involved with the program. The final concerns Ultimate Warranty's delay in providing a premium refund after the obligee's car was totaled. None of these documents addresses Warrantech, and the four concerning Ultimate Warranty suggest neither a flood of claims nor Ultimate Warranty's inability or refusal to make any payment on any claim.

[9]The plaintiff presented evidence that all Warrantech and Ultimate Warranty VSCs are backed by re-insurance. (Exhibit 155 at 11).

Moreover, the $2.6 million figure presumably includes reserves to cover losses on the "Velocity" VSCs sold and/or marketed by Evoleno.  However, even absent the declaratory relief the plaintiff is receiving with respect to such contracts, *see infra* Part III, it is not clear how the plaintiff could be responsible for payment on VSCs it did not agree to insure and did not represent it insured.

Similarly, the $2.6 million figure presumably includes reserves to cover losses on VSCs sold — contrary to the contracts among the plaintiff, Evoleno and the obligors — other than in the eight states in which the plaintiff is licensed to provide insurance.  The plaintiff did not assert, explain, or attempt to demonstrate its legal liability to make payment on claims arising from these VSCs,[10] and it did not attempt to separately quantify such claims.[11]  To the extent the $2.6 million addresses VSCs that were issued after the termination date of the plaintiff's policies but that erroneously identify the plaintiff as insurer, the same observations apply.[12]

For all of these reasons, the Court concludes that the plaintiff has failed to make an adequate showing of the amount, if any, it can be expected to lose in paying claims under its policies.[13]  Accordingly, the plaintiff is not entitled to any award under this element of

---

[10]On the contrary, the plaintiff presented evidence that it has sued the obligors issuing these VSCs to establish its lack of liability on them.

[11]The plaintiff had access to information from which to make some such estimate, since it presented the Court with three CD-ROMs which it describes as reflecting contracts written, date of issuance, state in which written, and fees earned.  (Docs. 103-05).

[12]Simply stating that the plaintiff "faces the very real exposure" of claims being made if the obligor does not satisfy them, (Pate Affidavit, ¶ 5), is insufficient.

[13]That the plaintiff, as it points out, has not received the audits to which its contracts with Evoleno and the obligors entitle it may excuse its lack of definitive figures, but it does not excuse its failure to utilize the information in its possession, including the CD-ROMs, to present reasonable estimates.

damage.[14]

### D.  Lost Purchaser for Plaintiff's Parent.

The evidence establishes that the plaintiff was owned by ARIC Investment, Inc., ("Investment"), the sole asset of which was the plaintiff.  After the downgrade by A.M. Best, Hermitage Insurance Co. ("Hermitage") executed a letter of intent to purchase Investment.  Because it could not get a good handle on the plaintiff's exposure from its automobile warranty venture, however, it backed out of the deal.  The plaintiff asserts that, had Hermitage bought Investment, it would have improved the plaintiff's access to credit (Hermitage being a $50-million dollar concern owned by a multi-billion dollar concern).  Moreover, Hermitage had an "A" rating, which "could have allowed" the plaintiff to market as an A-rated firm through a pool rating.  Absent this access to credit and return to a more profitable "A" rating, the plaintiff elected to stop writing new business and to allow Kodiak Insurance to take over existing business as policies come up for renewal, a position known as "run-off."

The plaintiff's evidence that it "could have" returned to an "A" rating under Hermitage does not make such a possibility probable.  Nor did the plaintiff estimate how long it would likely take to regain an "A" rating.  Without such a rating, the plaintiff apparently would have opted for run-off with or without Hermitage.

At any rate, the plaintiff did not attempt to quantify its loss from the failure of the Hermitage acquisition, and it did not suggest to the Court any method for forming an estimate of such loss.  The Court is therefore left to speculate as to what loss, if any, accompanied the failure of the acquisition, which it declines to do.  *See, e.g., Systrends,*

---

[14]The plaintiff suggests by affidavit that, by holding funds in reserve, it has lost investment income on those funds.  (Pate Affidavit, ¶ 7).  The plaintiff provided no figure for this loss or any way to estimate it.  At any rate, since the plaintiff is not entitled to an award for future losses on claims, as represented by its reserves, it cannot be entitled to an award for lost investment income on the funds held in reserve.

*Inc. v. Group 8760, LLC*, 959 So. 2d 1052, 1075 (Ala. 2006) (a plaintiff "must produce evidence tending to show the extent of damages as a matter of just and reasonable inference") (internal quotes omitted).[15]

In summary, the plaintiff is not entitled to any award under this element of damage.

### E.  Attorney and Actuarial Expenses.

Mentioned briefly in affidavit but not at the hearing is a request for expenses the plaintiff incurred in attempting to:  determine the number of contracts written and where; "minimize the damage" to the plaintiff from VSCs written in states where the plaintiff is not licensed, written subsequent to the cancellation date of its policies, and written on forms not approved by the plaintiff; and correct these deficiencies and/or illegalities in the VSCs.  The affiant identifies the amount of such expenses as $235,000.  (Lee Affidavit, ¶ 7).

The plaintiff has provided no information as to what services were performed by its attorneys and actuaries and in what context, beyond what little the Court can glean from other parts of the record.  This is significant because, while Alabama generally does not allow recovery of attorney's fees and expenses incurred in litigation with the wrongdoer,[16] it does allow such recovery when the natural and proximate consequence of the wrongdoer's conduct is to cause the plaintiff to become involved in litigation with a third person.  *E.g., Ex parte Burnham, Klinefelter, Halsey, Jones & Cater, P.C.*, 674 So. 2d 1287, 1290 (Ala. 1995).  The Court is aware that the first actuarial report precedes by three months the filing of this lawsuit, but it is also aware that the actuary was engaged to

---

[15]As noted in Part B, the plaintiff failed to support its claim for lost profits for 2006 and 2007.  It did not request an award for lost profits for any period after 2007.

[16]There are exceptions when such fees and expenses are provided for by contract or statute, but the plaintiff does not suggest that either is in play.

furnish additional reports every six months thereafter.  Similarly, the Court is aware that the plaintiff instituted litigation against multiple obligors, but it is also aware that the plaintiff has been engaged in this lawsuit against Evoleno for two full years.  Nor is it clear that the other litigation is the proximate result of Evoleno's misdoings as opposed to the wrongs of the obligors and/or third parties.  On this record, the Court has nothing but speculation to guide it in determining what portion of the $235,000 was expended on matters for which compensation is legally possible.

"Whenever recovery is sought for expenses incurred as a result of another's wrong, the measure [of damages] is the amounts expended which were reasonable under the circumstances."  *Haleyville Health Care Center v. Winston County Hospital Board*, 678 So. 2d 789, 793 (Ala. Civ. App. 1996) (internal quotes omitted).  "It is incumbent upon the claimant to offer proof that the amounts expended were reasonable."  Jenelle M. Marsh & Charles W. Gamble, Alabama Law of Damages § 7.3 at 99 (5th ed. 2004).  The plaintiff did not represent, much less attempt to establish, that the $235,000 amount it expended — assuming it is legally capable of being awarded — was reasonable.  Nor did the plaintiff provide the Court a method for determining what, if any, lesser amount might be reasonable.  Again the Court is left to speculate.

In summary, the plaintiff is not entitled to any award under this element of damage.


### F.  Other Elements of Damage.

The second amended complaint makes a demand for interest on the plaintiff's breach of contract claim, (Doc. 64 at 14-15), but the plaintiff did not repeat the request in its motion for default judgment, the accompanying filings, or at the hearing.  Likewise, the second amended complaint makes a demand for punitive damages on several of the plaintiff's tort claims, (*id*. at 16, 18, 21), but the plaintiff was silent on this demand subsequently.  Finally, the second amended complaint mentions Evoleno's obligation to

remit fees and other monies to the plaintiff, (*id*., ¶ 10), but it does not clearly allege that Evoleno failed to do so, and the matter was not addressed on motion for default judgment or at the hearing.

In summary, the plaintiff is not entitled to any award under these elements of damage.

## II.  Accounting.

The second amended complaint demands an accounting "of all vehicle service contracts and all monies associated with same." (Doc. 64 at 19).  The motion for default judgment makes no mention of this demand, and the plaintiff did not seek an accounting at the hearing.  Accordingly, the plaintiff is not awarded any such relief.

## III.  Declaratory Relief.

The second amended complaint, and the evidence presented at the hearing, establish that Evoleno marketed a VSC with the brand or trade name "Velocity," that the plaintiff was represented to purchasers as the insurer of these VSCs, and that the plaintiff neither agreed to insure these VSCs nor approved the form on which they were issued, as required by the parties' agreements.  The plaintiff seeks a declaration that it does not insure or reinsure, and has no obligation to insure or reinsure, these VSCs.  (Doc. 125 at 5).  This relief is fully supported by the plaintiff's showing and will be awarded.

The plaintiff seeks a similar declaration with respect to any other VSC sold or marketed directly by Evoleno, including without limitation those with the trade name "Encompass."  Evidence at the hearing indicated that Encompass is a Warrantech product.  At any rate, "[a] default judgment must not differ in kind from ... what is demanded in the pleadings."  Fed. R. Civ. P. 54(c).  The second amended complaint prays for declaratory relief only with respect to the Velocity VSCs, (Doc. 64 at 21, ¶ 67(a)), so the plaintiff may not obtain relief as to any others.

-11-

The second amended complaint, and the evidence presented at the hearing, establish that the plaintiff had no contractual or other duty to provide insurance on any VSC sold in any state other than those in which it was licensed to provide insurance. The plaintiff seeks a declaration that it does not insure or reinsure, and has no obligation to insure or reinsure, VSCs sold in any state other than those in which it is licensed, viz., Alabama, Georgia, South Carolina, Tennessee, Kentucky, Virginia, Indiana, and Mississippi. (Doc. 125 at 5). This relief was sought in the second amended complaint, (Doc. 64 at 21, ¶ 67(b)), the plaintiff is entitled to it, and it will be awarded.[17]

### CONCLUSION

The plaintiff's motion for default judgment as to liability has already been granted. (Doc. 129). For the reasons set forth above, the plaintiff's motion as to damages is **granted** in the amount of $150,000 and as to declaratory relief is **granted** as set forth above. In all other respects, the motion for default judgment is **denied**. Judgment shall be entered accordingly by separate order.[18]

DONE and ORDERED this 24th day of November, 2008.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[17]The second amended complaint seeks certain other declaratory relief, (Doc. 64 at 21, ¶ 67(c), (d)), but the motion for default judgment makes no mention of it, and the plaintiff did not seek such relief at the hearing. Accordingly, it is not awarded.

[18]The effect of this modest award of damages may be less than meets the eye, since the plaintiff previously represented that Evoleno "is 'defunct' and not operating and, to the knowledge of counsel for ARIC, has no ability or means to provide funds to pay claims on the 'Velocity' contracts." (Doc. 99 at 2, ¶ 2).